# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**EMILE PIERCE**                                        **CIVIL ACTION**

**VERSUS**                                                  **NO. 06-2117**

**N. BURL CAIN, WARDEN**                    **SECTION "C"**

## ORDER AND REASONS

This matter is before the Court on a petition for writ of habeas corpus by Emile Pierce,
seeking relief pursuant to 28 U.S.C. § 2254.  The petitioner raises five claims for relief from his
October, 2001 conviction of one count of armed robbery and subsequent sentencing.  Upon a
thorough review of the trial, direct appeal, and post-conviction records, the habeas petition,
response, rebuttal, memoranda, and applicable law, the Court has determined that petitioner's
habeas corpus petition is without merit.  For the reasons set forth below, this petition is DENIED
WITH PREJUDICE.

## I. BACKGROUND AND PROCEDURAL HISTORY

The petitioner is a prisoner of the state confined to the Louisiana State Penitentiary in
Angola, La.   Fed. Rec. Doc. 1  He filed this federal application for writ of habeas corpus dated

April 3, 2006.  Fed. Rec. Doc. 1-3 at 67.   After a trial in which he represented himself *pro se*,

petitioner was found guilty of one count of armed robbery in the 24th Judicial District Court for

the Parish of Jefferson, State of Louisiana on October 17, 2001.  State Rec. Vol. 5 at 192.  The

court sentenced petitioner to fifty years at hard labor on November 5, 2001.  State Rec. Vol. 7 at

657.  The district attorney filed a multiple offender bill on the same day.  State Rec. Vol. 5 at

203-04.  After a hearing, the court found the district attorney had proved the allegations

contained in the multiple offender bill on May 14, 2002.  State Rec. Vol. 7 at 683.  The court

vacated the original sentence and sentenced the petitioner to life imprisonment without benefit of

parole, probation, or suspension of sentence on May 23, 2002.  *Id.* at 690.

The following facts are taken from the Statement of Facts of the Louisiana Court of

Appeal, Fifth Circuit :

> At trial, the following facts came out. At approximately 8:00 a.m.
> on July 21, 1999, the Defendant robbed Joan Hargis in the parking
> lot near the New Horizons Computer Center on Veterans
> Boulevard. She testified that she was going to a morning class at
> the computer center and was standing next to her car gathering her
> belongings, when the Defendant approached her. The Defendant
> addressed Ms. Hargis, but she did not hear what he said. Ms.
> Hargis said, "Excuse me?" to which the Defendant replied, "Give
> me your purse." Ms. Hargis testified that she thought the
> Defendant was kidding, but then she saw that he had a knife in his
> hand. The Defendant thrust the knife toward her and said, "Don't
> do anything crazy, lady, give me your purse." While still holding
> the knife, the Defendant grabbed Ms. Hargis' purse and ran toward
> a grey car. As the Defendant fled, Ms. Hargis yelled for the
> Defendant to "at least leave [her] license." The Defendant leaped
> into the passenger's side of the car and someone else drove the car
> away. The police were called and Deputy Louis Munsch of the
> Jefferson Parish Sheriff's Office (JPSO) responded. Ms. Hargis

2

gave Deputy Munsch the license plate number of the get-away-car and provided a description of the robber.

There were two other witnesses in the parking lot, Anita Hamilton and Fred Jensen, who both testified at trial. Ms. Hamilton testified that she saw the Defendant approach Ms. Hargis as she exited her car. She initially believed that the Defendant and Ms. Hargis were engaged in a domestic disturbance, because they were "arguing." However, Ms. Hamilton then saw the Defendant "rip" the purse from Ms. Hargis and get into a car. Ms. Hamilton said that she saw "something" in the Defendant's hand, but she was not sure what the object was.

Mr. Jensen, called as a defense witness, testified that he did not see a weapon, that Ms. Hargis was scared and did not want to release her purse. According to Mr. Jensen, the Defendant "was holding something up to her" and was "threatening her," but he did not see what the object was.

Through a computer check, Deputy Munsch learned that the get-away car was registered to Emile and Tonya Pierce. About an hour after the robbery, Detective Willie Jones of the JPSO arrived and Deputy Munsch informed him of the morning's events. Detective Jones testified that he went to several of the Defendant's last known addresses, but failed to locate the Defendant. In the early morning hours of the next day, July 22, 1999, the police ultimately tracked the Defendant to a motel in West Baton Rouge Parish. Before traveling to Baton Rouge, Detective Jones had obtained a warrant for the Defendant's arrest. After the Defendant was advised of his rights, he consented to a search of his motel room and car, which was parked at the motel. Nothing was recovered from the car. A purse matching the description of Ms. Hargis' purse was found in the hotel room.

The Defendant was interviewed at the West Baton Rouge Parish Sheriff's Office where he gave a statement to Detective Jones. In the statement, which was recorded and transcribed, the Defendant acknowledged that he had been advised of his rights and that he wished to waive those rights. The Defendant told Detective Jones

3

that he had robbed Ms. Hargis, but denied that he was armed with a knife. The Defendant said that the driver of the car was not his wife, but a woman whom he had met a few hours before the robbery. Both the transcript of the statement and the tape were admitted into evidence at trial and the recorded statement was played for the jury.

At trial, the Defendant testified that on February 2, 1999 he was paroled from Angola State Penitentiary (Angola) after serving nine years for an armed robbery conviction. The Defendant admitted that he had robbed Ms. Hargis on July 21, 1999, but said that he was not armed. Further, he said that he had committed the robbery under the influence of cocaine. According to the Defendant, he was out all night preceding the robbery and he had spent all of his money. The Defendant said that he did not threaten Ms. Hargis or even touch her, but just grabbed her purse. After the robbery, he dropped off his female companion and bought gas with one of Ms. Hargis' credit cards. Later that day, he told his wife he had done "something stupid" and he went to obtain more drugs.

At trial, Defendant acknowledged making the statement and said that he honestly answered the questions. The Defendant admitted that, on April 17, 1990, he pled guilty to two counts of armed robbery and one count of attempted armed robbery. The Defendant also admitted that he pled guilty to simple escape from prison. However, the Defendant testified that he developed a conscience after spending time at Angola and was a "changed man" when he was released from Angola.

Part of the Defendant's theory of the case was that the district attorney's office had inflated the charge to armed robbery because of his past criminal history. To this end, the Defendant called Peter Post, an inmate at Angola, who said that he had been classified as a "Code Six" career criminal when he was 17 years old even though he had no prior convictions. After Mr. Post's cross-examination, the State introduced certified copies of his prior convictions for simple burglary and armed robbery. Mr. Post stated, however, that he did not believe he had any prior convictions since appeals were pending.

4

> In rebuttal, the State presented the testimony of Lieutenant Bruce
> Sanders of the JPSO who explained that an offender is considered
> to be a career criminal after five felony arrests and/or two felony
> convictions.

*State v. Pierce*, 2002-KA-1267 (La.App. 5 Cir. 4/8/2003), 846 So.2d 55, 57-58.  Petitioner, now

with counsel, appealed to the Louisiana Court of Appeal, Fifth Circuit, urging one assignment of

error, claiming the state had presented insufficient evidence to prove he had committed the

robbery with a dangerous weapon.  The Louisiana First Circuit affirmed petitioner's conviction

and sentence on April 8, 2003.  *Pierce*, 864 So.2d 55;  State Rec. Vol. 2, Tab 1.

Petitioner filed an application for post-conviction relief in the state trial court on April 1,

2004, raising five claims for relief: 1) ineffective assistance of counsel on appeal; 2) trial court

error in denying petitioner's motion for subpoena duces tecum; 3) trial court error in improperly

limiting the scope of cross-examination; 4) applying the Code 6/Vertical Prosecution formula

violated the petitioner's constitutional rights; and 5) the petitioner was illegally sentenced as a

multiple offender.  State Rec. Vol. 3, Tab 3.  The trial court denied his first and fifth claims on

the merits on April 12, 2004, and directed petitioner to file a response indicating written reasons

for his failure to raise his second through fourth claims on direct appeal.  *Id.* at Tab 2.  After he

responded, the court denied his second through fourth claims on the grounds that they could and

should have been raised on direct appeal, on May 24, 2004.  *Id.* at Tab 7.   The Louisiana Fifth

Circuit subsequently denied his writ applications, as to the trial court's April 12, 2004 ruling on

June 16, 2004, State Rec. Vol. 4, Tab 12, and as to the trial court's May 24, 2004 ruling on July

5

7, 2004.  Id. at Tab 15.  The Louisiana Supreme Court denied his subsequent writ applications, without reasons, from the appellate court's decision concerning the April 12, 2004 trial court ruling May 13, 2005,  State Rec. Vol. 8, Tab 22, and from the appellate court's decision concerning the trial court's May 24, 2004 ruling on June 17, 2005.  State Rec. Vol. 9, Tab 23.

Petitioner filed a second application for post-conviction relief in the trial court on March 8, 2005, claiming that the Louisiana habitual offender statute under which he had been sentenced was unconstitutional.  State Rec. Vol. 4, Tab 16.  The trial court denied relief on March 16, 2005.  *Id.* at Tab 18.  The Louisiana Fifth Circuit denied his subsequent writ application on April 21, 2005.  *Id.* at Tab 11.  The Louisiana Supreme Court denied petitioner's writ application from the appellate court's decision on March 17, 2006.  Thereafter, petitioner filed the instant petition for writ of habeas corpus in federal district court, signed April 3, 2006.

## II.  PROCEDURAL REVIEW

### A. Custody Requirement

A petitioner must be "in custody" for a federal court to entertain a petition for habeas relief.  28 U.S.C. § 2241(c); 28 U.S.C.§ 2254(a).  Physical incarceration satisfies the custody requirement.  *See e.g., Maleng v. Cook*, 490 U.S. 488, 491, 109 S. Ct. 1923, 1925 (1989).  Here, petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, pursuant to the conviction he is attacking.  Fed. Rec. Doc. 1.  Accordingly, this condition of the Court's subject matter jurisdiction over petitioner's claim for relief is satisfied.

### B. Venue

Under 28 U.S.C.A. § 2241(d), venue lies in the district in which the petitioner is incarcerated or the district from which his conviction or sentence was obtained. Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, which is in West Feliciana Parish, a parish that falls within the Middle District of Louisiana under 28 U.S.C. § 98(b). However, petitioner was convicted and sentenced in Jefferson Parish, which under 28 U.S.C. § 98(a) falls within the Eastern District of Louisiana. Therefore, venue lies for this petition under 28 U.S.C.A § 2241(d).

### C. Exhaustion

The state argues that petitioner's first through fourth claims are unexhausted as required under AEDPA, and that therefore his petition should be dismissed as "mixed." Rec. Doc. 9 at 9. The Court disagrees. Generally, exhaustion of adequate state remedies is a "condition precedent to the invocation of federal judicial relief under [28 U.S.C.§ 2254]." *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973). To satisfy the exhaustion requirement, the entirety of the factual allegations and legal theories presented to the federal court must have been presented in a procedurally proper manner to the highest state court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding a habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim) (*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509 (1982). It is important to note that the issues in a habeas petition could have been presented to the highest state court on direct appeal, or in a state post-conviction proceeding; either is sufficient and both are not required. *Brown v. Allen*, 344 U.S. 443, 447

7

(1953); *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).  The requirement of

exhaustion is now codified by 28 U.S.C.§ 2254(b)(1), which provides, *inter alia*, that habeas

relief "shall not be granted unless it appears that (A) the applicant has exhausted the remedies

available in the courts of the State . . . ."  The other statutory provisions providing exceptions to

the exhaustion rule are inapplicable here.

Petitioner presents five claims for review in his federal habeas petition.  The state argues

that all but his fifth claim was unexhausted in the state courts, and that therefore his petition

should be dismissed as a "mixed petition." *See Rose v. Lundy*, 455 U.S. 509 (1982).  The state

notes that while he initially sought post-conviction relief on his first through fourth claims in the

state courts relative to the substantive nature of the claims currently presented, in his writ

applications to the Louisiana Supreme Court he presented them as a challenge to the authority of

the state district court to grant summary dismissal of his claims, rather than within the context of

constitutional violations.  However, a full reading of his claims shows that the substance of the

claims were "fairly presented" to the state's highest court.  *See* State Rec. Vols. 8 and 9.  Indeed,

the Louisiana Supreme Court's decisions regarding the district court's summary denials upheld

the denial of those claims on their merits.  The purpose of the exhaustion requirement arises out

of concern for comity and the belief that state courts should be given a full opportunity to correct

for themselves violations of federal constitutional requirements in state criminal proceedings

before a federal court will hear claims of such violations on collateral review.  Those purposes

would not be served here if this Court concluded the claims were unexhausted.  If this Court

were to agree with the state, petitioner could not return to the state courts to further exhaust these

claims; the summary dismissal of the claims has already been upheld by the state's highest court. All of petitioner's claims were raised in his application for writs of certiorari and review to the Louisiana Supreme Court on his direct appeal or on his application for post conviction relief. Accordingly, petitioner has satisfied AEDPA's exhaustion requirement.

### D. Timeliness

The state submits that the petition is timely, and after reviewing the record, the Court agrees. The Anti-terrorism and Effective Death Penalty Act of 1996[1] (AEDPA) requires that a habeas petitioner bring his or her 28 U.S.C.§ 2254 action within one year of the date on which his or her conviction or sentence becomes final.[2] AEDPA's one-year statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28

---

[1] Pub. L. 104-132, Apr. 24, 1996, 110 Stat. 1214.

[2] 28 U.S.C.§ 2244(d) provides:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

U.S.C.§ 2254(d)(2); *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998).  "A properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (*quoting Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998) (internal quotations omitted); *Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000).  Finally, out of an abundance of caution, this Court construes any tolling ambiguities in favor of a petitioner.  *See, e.g.,  Navarre v. Stalder,* 2007 WL 1702774, *5 (E.D.La. 2007).

"[F]inality attaches when [the United States Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."  *Clay v. United States*, 537 U.S. 522, 527 (2003); *see also, Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (reaching the same conclusion regarding "finality").  A petitioner has ninety days to file a writ of certiorari in the United States Supreme Court after a decision is rendered by the state's highest court.  Sup. Ct. R. 13(1).

Here, petitioner's conviction and sentence became final on May 9, 2003, when the time for filing for an appeal to the Louisiana Supreme Court from the Louisiana Fifth Circuit's judgment affirming the conviction and sentence expired.  Three-hundred and twenty-eight days of his federal habeas filing time elapsed before he filed his first application for post-conviction relief on April 1, 2004.  The statute of limitations was tolled until the Louisiana Supreme Court denied his writ application from denial of his second post-conviction relief application on March 17, 2006.  Seventeen more days elapsed before he signed the instant federal application on April 3, 2006.  Thus, the instant application was filed before his 365 days had elapsed.  Therefore, the

Court finds that the petition is timely filed under AEDPA.

### III.  PETITIONER'S CLAIMS

#### A. Standard of Review

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for questions of fact, questions of law, and mixed questions of law and fact for habeas petitions. The statute now provides that if a state court has adjudicated a claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under 28 U.S.C.§ 2254(d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Questions of fact are reviewed under 28 U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application"
> clauses have independent meaning.  A federal habeas court may
> issue the writ under the "contrary to" clause if the state court
> applies a rule different from the governing law set forth in our
> cases, or if it decides a case differently than we have done on a set
> of materially indistinguishable facts. The court may grant relief
> under the "unreasonable application" clause if the state court
> correctly identifies the governing legal principle from our
> decisions but unreasonably applies it to the facts of the particular
> case. The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively
> unreasonable, and . . . an unreasonable application is different from
> an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal

11

citations omitted).

As to questions of fact, a state court's factual findings are presumed to be correct and a federal court "will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

### B. Petitioner's Claims

Petitioner raises the following claims in his petition:

1.    Appellate counsel rendered ineffective assistance of counsel in violation of petitioner's Sixth Amendment Rights;

2.    The trial court abused its discretion, by denying petitioner's motion for Subpoena Duces Tecum, of critical impeachment evidence with which to put forth his only defense at trial, in violation of his Fifth, Sixth, and Fourteenth Amendment Rights to Due Process and a Fair Trial;

3.    The trial court abused its discretion by improperly limiting petitioner's cross examination, shielding a key witness from impeachment, in violation of his Sixth and Fourteenth Amendment Rights to Confront and Due Process;

4.    The Code 6/Vertical Prosecution ("VP") formula as applied to petitioner in this case constituted a Bill of Attainder, Denial of Fair Warning, Excessive Bail, Denial of Due Process, Denial of Equal Protection of the Law, in violation of his Sixth, Eighth, and Fourteenth Amendment rights, and in violation of Article 1 § 10 to the United States Constitution;

5.     Petitioner was denied Due Process when the state failed to give him notice, denied him a

jury trial, did not establish guilt beyond a reasonable doubt, and invoked a punishment

that is not responsive to the original charge, thereby establishing an invalid sentence

because of an unconstitutional rule, LA.REV.STAT. 15:529.1, a violation of petitioner's

Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment Rights.

Petitioner raised each of his claims in his post-conviction relief proceedings.

The State argues that petitioner is not entitled to relief because his second through fifth

claims are procedurally defaulted and barred from this Court's review, and that all of his claims

were properly determined by the state courts to be without merit.

### 1. Claim One: Ineffective Assistance of Appellate Counsel

Petitioner claims he was rendered ineffective assistance of appellate counsel, in violation

of his Sixth Amendment right to the assistance of counsel, when his counsel failed to raise

several issues on appeal (his second through fourth claims in this federal petition).  He attaches

correspondence from his appellate counsel which demonstrate that he requested she raise these

claims.  Fed. Rec. Doc. 1-6, Exs. B-D.  In this correspondence, his counsel indicates her intent to

"raise any issue that has some merit," *id.*, Ex. B, and that other issues that required additional

evidence outside the appellate record must instead be raised in a post-conviction relief

application.  *Id.*, Ex. B, D.  The trial court, in reviewing his later post-conviction relief

application that did raise these claims, denied them as procedurally barred for failure to raise

them on direct review.  State Rec. Vol. 3, Tab 7.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court

13

established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate both (1) counsel's performance was deficient *and* (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  An analysis of an attorney's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *Strickland*, 466 U.S. at 689.  "[I]t is necessary to judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (*quoting Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Indeed, the Fifth Circuit has adopted the *Strickland* test holding: "[d]eficient performance is prejudicial only upon a showing  that but for counsel's errors, there is a reasonable probability

14

that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined." *Little*, 162 F. 3d at 860-61.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

It is important to note that petitioners bear the burden of proof when asserting a claim for ineffective assistance of counsel.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also, Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  *Strickland*, 466 U.S. at 697.  Furthermore, a claim of ineffective assistance of counsel is a mixed question of law and fact.  *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), *cert. denied*, 538 U.S. 969 (2003).  Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1).

Here, the petitioner's claim fails both prongs of the *Strickland* test.   Appellate counsel need not advance every argument, regardless of merit, urged by an appellant.  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985), *citing Jones v. Barnes*, 463 U.S. 745 (1983).  The Supreme Court noted in *Jones* that experienced advocates have emphasized the importance of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few

key issues," and that "a brief that raises every colorable issue runs the risk of burying good

arguments." *Jones*, 463 U.S. at 751, 753.   His appellate counsel stated that "[a]s in all cases,

[she would] raise any issue that has some merit."  Fed. Rec. Doc. 1-6, Ex. B.  Thus it appears

counsel exercised her professional judgment in determining which issues to raise on appeal.

As petitioner notes, the issue appellate counsel did raise on petitioner's behalf on direct

appeal, that the state had presented insufficient evidence to prove he had committed the robbery

with a dangerous weapon, was a weak one.  Petitioner admitted at trial that he had robbed the

victim; his only defense was that he was not armed during the robbery as claimed by the victim.

Petitioner states in his petition:

> This issue was absurd and frivolous in light of Petitioner's defense
> at trial, which was to simply win a responsive verdict of "simple
> robbery.".... [T]he only evidence needed by the state to uphold this
> conviction on appeal was simply a credible eye-witness who
> testified to seeing a weapon.  State v. Cotton, 646 So.2d 1144 (La
> App. 5th Cir. 3/7/01).  The state produced such a witness at trial,
> the victim, and as such the state met the sufficient evidence set
> forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61
> L.Ed.2d 722 (1979).

Fed. Rec. Doc. 1-3 at 13-14.   The Court agrees that, if not "absurd and frivolous," this issue was

weak.  In addition to the victim's own testimony that petitioner wielded a knife during the

robbery, the other two witnesses of the robbery, Anita Hamilton and Fred Jensen, testified that

they saw petitioner holding "something."   Although they could not confirm that the "something"

was a knife, their testimony tended to corroborate the victim's account.  To prevail on this claim

on appeal, the state needed only prove that, based upon the evidence produced at trial viewed in

the light most favorable to the prosecution, a reasonable fact finder could have found petitioner

was armed beyond a reasonable doubt.   *See Jackson v. Virginia*, 443 U.S. 307 (1979).   The state

could readily meet this standard based on the record.   In addition, appellate counsel turned out to

be incorrect that petitioner could not raise his other claims on direct appeal.   Indeed, the trial

court in his post-conviction proceedings concluded that these claims could have been raised on

appeal, and dismissed these claims as procedurally barred for his failure to do so.

However, even if his counsel's performance was arguably deficient, petitioner cannot

succeed on this claim without also demonstrating that he was prejudiced by the failure to raise

his other claims.   Petitioner must show that the but for his counsel's unprofessional errors, the

result of his appeal would have been different.   To do that, petitioner must show that one or more

of the issues unraised by his counsel on appeal would likely have warranted relief.   The Court

therefore will now address the substance and merits of petitioner's second through fourth federal

claims in this context.   Because it also concludes that these claims do not have merit, the Court

ultimately finds that petitioner has not shown prejudice from any arguable deficiency in his

appellate counsel's performance, and that therefore his claim of ineffective assistance of

appellate counsel must fail.

### a. Claim that trial court erred in denying request for subpoena duces tecum

Petitioner claims that the trial court erred in denying his motion for a subpoena duces

tecum, seeking financial statements from the victim.   He argues that such statements would have

proven the victim did not have $300 cash on her person at the time of the robbery, as she claimed

to the police and at trial.   Petitioner claimed that the purse "didn't have half that amount in it"

17

when he stole it.  State Rec. Vol 7 at 475.  At trial, therefore, he attempted to question the victim

about the source of the $300 in an effort to show that she lied about the amount, perhaps with the

intention of defrauding her insurance company.  *See Id.*, at 475-477.  After a hearing, the trial

court denied the motion without stating reasons.  See Fed. Rec. Doc. 1-6, Ex. F.

The ultimate relevance of the financial records of the victim, as argued by petitioner,

follows a somewhat tenuous course.  Petitioner's only defense at trial was that he did not utilize

a dangerous weapon during the robbery as claimed by the victim.  Petitioner argues had he

obtained a subpoena duces tecum for the victim's financial records, he could have shown that

she did not have $300 on her at the time of the robbery, as she claimed to the police.  Had he

shown that she lied about having the $300 "spur of the moment," perhaps in an effort to defraud

her insurance company, "then her entire testimony would be impeached."  Fed. Rec. Doc. 1-3 at

17.  Thus her claim that he had been armed with a knife during the robbery would be

undermined.

There are several problems with the logic of petitioner's argument.  First, the victim did

not assert that she had precisely $300 on her, but was rather unsure of the exact amount. State

Rec. Vol. 7 at 474-75.  The premise of petitioner's argument, that the victim's financial records

would have shown that she had lied, is unsound.  It is not clear what such records could have

demonstrated with regard to the alleged $300.  The state demonstrated that the victim had almost

$14,000 in her savings and checking accounts near the time of the robbery.  Even if there was no

discernable single transaction from which the (approximately) $300 came from (the victim

indicated it came from cashing her paycheck, *id*. at 477), she easily could have accumulated such

18

an amount from a number of transactions and sources; simply put, the absence of a clearly

discernable withdrawal of approximately $300, the most her financial records could have shown,

would have proven nothing.  To go from this to petitioner's claim that the victim's entire

credibility would have been impeached, including her testimony that he was armed with a knife

(which was corroborated indirectly by the testimony of the other witnesses) is far too tenuous to

conclude that the trial court was unreasonable in denying his motion.  Though the court did not

give reasons for its denial, the state's arguments opposing the motion related to the irrelevance of

the records to the issue at trial.  The Court agrees that any probative value such records could

have had at trail is minimal, if not nonexistent, and the appellate court reviewing such a claim

almost surely would have agreed, in light of the significant deference given to evidentiary

rulings of a trial court.  Thus this Court finds that the state court was not unreasonable in

concluding that petitioner was not prejudiced by his appellate counsel's failure to raise this

claim.

**b. Trial court erred in limiting off cross-examination of state's witness**

In his third federal claim, one of the claims dismissed in his post-conviction proceedings

for failure to raise it on appeal, petitioner claims that his constitutional rights to confront and

cross-examine witnesses were violated when the trial court cut off his cross-examination of the

victim at trial.  This claim is closely related to his claim regarding the denial of his motion for a

subpoena duces tecum of the victim's financial records.  Petitioner argues that, "despite being

denied [that] critical impeachment evidence,"[3] he had nearly undermined the victim's credibility

---

[3] Fed. Rec. Doc. 1-3 at 20-21.

on cross-examination by "bluffing" the victim as if he had obtained such evidence, but the judge then shielded the victim from answering a critical question.

A review of the record, however, shows that the trial judge had permitted the petitioner a good deal of latitude in questioning the petitioner along these lines.  State Rec. Vol. 7 at 474-79.  The court overruled an objection from the state regarding a question to the victim as to whether she had filed a claim for reimbursement from her insurance company (she had not).  *Id.* at 475-77.  The court only cut off his questioning when it believed she had fully answered a question and the questioning had become repetitive.  *Id.* at 478.  The victim had testified, in essence, that she could not recall on what day of the week her regular pay-day was, as over two years had elapsed since the time of the robbery.  *Id.* at 477-78.  The extent of cross-examination is subject to the discretion of the trial judge to preclude repetitive and unduly harassing interrogation.  *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  As the state notes in its response to the petition,[4] Louisiana law is well-established that a trial judge is vested with "much discretion" in controlling the scope and extent of witness examination, and those rulings will not be disturbed on appeal absent abuse of that discretion.  *See, e.g. State v. Sandoval*, 02-230 (La. App. 5 Cir. 2/25/03). 841 So.2d 977, 985.  Petitioner's appellate counsel would undoubtedly have realized the unlikelihood of a state appellate court overturning the trial court's decision based on this standard of review and facts of this case.  Therefore, the Court finds that the state court was not unreasonable in concluding that petitioner was not prejudiced by his appellate counsel's failure to raise this claim.

---

[4] Fed. Rec. Doc. 9 at 16.

**c. Various issues related to the constitutionality of prosecution as a Code 6 offender**

In his fourth federal claim, which he raised in his post-conviction proceedings and which was denied as procedurally barred for failure to raise it on direct appeal, the petitioner claims a number of constitutional violations related to his prosecution as a "Code 6" offender by the Jefferson Parish district attorney's office.  He claims that he was impermissibly prosecuted under an unconstitutional bill of attainder, and that he was selectively prosecuted.  He claims that repeated references to his status as a Code 6 offender by the prosecution and the trial judge implied he was "in some unknown higher jeopardy."  Fed. Rec. Doc. 1-3 at 27.  This Court concludes that petitioner has failed to demonstrate any constitutional violations relative to his prosecution as a Code 6 offender or any prejudice resulting from his appellate counsel's failure to raise this claim in his direct appeal.

The Jefferson Parish Code 6/Vertical Prosecution program was described by a court in this district as follows:

> Jones's claims arise from his classification and processing through the "Code 6" unit of the Jefferson Parish Sheriff and District Attorney's offices. The Jefferson Parish Sheriff's Office established the "Code 6" Career Criminal Intercept Unit and the Vertical Prosecution Program to reduce crime by prosecuting the criminals who are responsible for a majority of the crime. The program is based on studies and experience which indicate that the recidivist is a small but chronic percentage of the criminal population who is responsible for a large and disproportionate share of crime.
>
> The Code 6 program is composed of three components which are designed to insure that
>
> (1) the participants are objectively identified through a 20 point rating system which takes into account felony arrests, convictions

21

and evaluates the total criminal history accumulated including pending charges. Heavy emphasis is placed on crimes of violence, drugs, and weapons and attention is also given to an individual who has obtained five or more felony arrests in three different crime categories or an individual who has obtained a felony arrest within thirty months of the current charge.

(2) individuals are selectively incapacitated from society by the Code 6 participants appealing to magistrates to enhance bonds based on either the severity of the charge or the criminal history of the offender as reflected by the point total criteria;

(3) individuals who are identified are then vertically prosecuted by the Code 6 special prosecutor who uses the State's Habitual Offender Law to enhance sentences through multiple billing. Once assigned to the Vertical Prosecution program, the individual is administratively classified as a "Red File" connoting a high rating with one or more prior felony convictions. All other accepted defendants are classified as a "Blue File" and are noted as target offenders that rate high on the criteria. Blue file individuals are prosecuted by the regular division district attorneys with special supervisory instructions regarding pleas or disposition of sentencing.

*Jones v. Sassone*, 205 F.Supp.2d 602, 603-04 (E.D.La.,2002) (Lemmon, J.)

The Court discerns no constitutional violation regarding petitioner's prosecution under this program.  While petitioner claims he was placed in some "unknown higher jeopardy" as a result, of which he was not given fair notice, the prosecutor attempted to explain at a hearing on this issue that "Code 6" was not an additional element of the crime, such that it did not need to be included in the bill of information.  Fed. Rec. Doc. 1-6, Ex. F at 10.  Petitioner was only placed at jeopardy in his prosecution of potential conviction for the crime of which he was accused.

Petitioner further claims that the Code 6/VP formula was a sophisticated mode of discrimination aimed at a class of persons whom the Code 6/VP officials arbitrarily decide belong to the "criminal element class of their society in Jefferson Parish." Fed. Rec. Doc. 1-3 at 27. Far from being arbitrary, however, it appears that persons are selected for prosecution under this program on the basis of past criminal history, including violent crimes. Petitioner has a heavy burden in prevailing on such a claim. "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *U.S. v. Armstrong*, 517 U.S. 456, 464 (1996) (internal citation and quotations omitted). Petitioner can show, at best, that a special team of prosecutors, in coordination with the sheriff's office, selected petitioner as "Code 6" and aggressively prosecuted his case as a result of his criminal history. This is not a constitutional violation, but merely the exercise of prosecutorial priority and discretion. Even if only the very best or most experienced prosecutors in the district attorney's office are chosen for such prosecutions (and there is no explicit suggestion here that this is the case), that is fully within the discretion of the office.

Petitioner also suggests that there is an element of racial discrimination to the Code 6 program. Petitioner presents data that seventy percent of the Code 6 offenders in Jefferson Parish were black. Fed. Rec. Doc. 1-7, Ex. I. Petitioner would have to show that the prosecutorial policy had a discriminatory effect and it was motivated by a discriminatory purpose, in this context, that similarly situated individuals of a different race were not

prosecuted.  *Armstrong*, 517 U.S. at 465.  Petitioner presents no evidence that blacks make up a disproportionate amount of the Code 6 prosecutions compared to the total number of prosecutions of those in Jefferson Parish who have a similar criminal history.  Petitioner goes on to suggest that the Code 6 program is a legislative scheme that otherwise is subject to strict scrutiny under the Fourteenth Amendment equal protection clause, because it discriminates against a "suspect class": "a small but chronic percentage of the criminal population" with extensive criminal histories.  Fed. Rec. Doc. 1-3 at 52.  Such a class is assuredly not suspect for purposes of constitutional analysis.

Petitioner can not show that he was prejudiced by his classification and prosecution at his trial.  The state was required to, and did, convince a jury that it had proven every element of the charge of armed robbery beyond a reasonable doubt.  While the Court can imagine that repeated and vague reference by the court and prosecutor to a criminal defendant's "Code 6" status that suggested a degree of danger or guilt that was not relevant or in evidence could impermissibly prejudice such a defendant, the instances to which petitioner points of such references were generally not made in the presence of the jury.  Fed. Rec. Doc. 1-3 at 28-29.  Those references to the Code 6 prosecution that were made in the presence of the jury were initiated by the petitioner himself, beginning with his opening statement, State Rec. Vol. 6 at 446, related to his defense of "selective prosecution."  *See also*, Direct examination of defense witness, Peter Post, State Rec. Vol. 7 at 532.   Petitioner also claims that the court reflected bias at trial as a result of his Code 6 status; as discussed above, petitioner can point to no decisions of the trial judge that were

otherwise in error or an abuse of discretion.[5]

Because petitioner has not demonstrated any cognizable claim of a federal constitutional violation and resulting prejudice to him related to his prosecution as a Code 6 offender, this Court again finds that the state court was not unreasonable in concluding that petitioner was not prejudiced by his appellate counsel's failure to raise this claim.

As a result, petitioner has not shown that he was prejudiced in any way by his appellate counsel's performance. His claim of ineffective assistance of appellate counsel in violation of his federal Sixth and Fourteenth Amendment rights is therefore without merit.

### 2. Claims Two, Three and Four

The State contends that petitioner's second through fourth claims are in procedural default and are barred from federal review. Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and

---

[5]Petitioner also argues, as a subclaim, that his bail was set excessively high as a result of his being classifies as a Code 6 offender. The question of whether the bail set before trial became moot after the judgment of conviction was rendered. *Bostick v. U.S.*, 400 F.2d 449 (5th Cir. 1968); *Hawkins v. Lopez*, 2006 WL 33032512 *2 (S.D.Tex.11/13/06). In any event, petitioner has not made a showing that the trial court set his bail arbitrarily. *See, e.g. U.S. ex rel. Savitz v. Gallagher*, 800 F.Supp. 228 (E.D. Pa. 1992). Rather, the trial court appears to have considered petitioner's extensive criminal history (the same history that led to his categorization as a Code 6 offender) in setting the bond amount.

adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.

This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). In this case, the trial court, in its May 24, 2004, ruling, dismissed the second through fourth claims because of petitioner's failure to raise those claims on appeal. State Rec. Vol. 3, Tab 7. The court apparently relied upon LA.CODE CRIM.P. art. 930.4(C) and/or (F) in denying petitioner's second through fourth claims for relief.[6] The Louisiana Fifth Circuit found no error in trial court's ruling, State Rec.Vol. 4,

---

[6] La. Code Crim.P. art. 930.4 reads in its entirety:

Art. 930.4. Repetitive applications
A. Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.
B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.
C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.
D. A successive application may be dismissed if it fails to raise a new or different claim.
E. A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.
F. If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim.

Tab 15,  and the Louisiana Supreme Court denied the subsequent writ without reasons.  State

Rec. Vol. 9, Tab 23.  Thus, the trial court's ruling was the last reasoned decision on the issue.

*Ylst*, 501 U.S. at 802.

Therefore, it appears the state courts barred review petitioner's claims based on

procedural default pursuant to LA. CODE CRIM. P. arts. 930.4(C) and/or (F).  This Court must

consider whether the bar prohibits consideration of the claim on federal habeas corpus review.

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must

be both independent and adequate.

### a. Independent State Ground

A procedural restriction is "independent" if the state court's judgment "clearly and

expressly" indicates that it is independent of federal law and rests solely on a state procedural

bar.  *Amos*, 61 F.3d at 338.  For the reasons outlined above, there is no question that the State

Trial Court  relied exclusively on rules of Louisiana procedural default, independent of federal

law, in reaching its decision.  *See e.g.*, *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Art.

930.4); *Washington v. Cain*, 2000 WL 863980 (E.D. La. June 27, 2000) (Art. 930.4).

### b. Adequate State Ground

The question of the adequacy of a state procedural bar is itself a federal question.

*Douglas*

*v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To

be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly

applied to the majority of similar cases.  *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339).

A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.* This federal habeas court must therefore evaluate the adequacy of the rules applied to bar Pierce's claims.

In doing so, a federal habeas court does not sit, however, to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F.Supp.2d 655, 674 (S.D. Tex. 1999). Rather, a federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002). For this reason, when state courts apply a procedural bar that has no foundation in the record or

basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, 1999 WL 562728 at *4 (E.D. La.) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, 1999 WL 518843 (E.D. La.) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied).  However, where such a basis exists in state law, the bar must stand.

As noted above, the basis for dismissal of these claims was the state procedural ground found in LA. CODE CRIM. P. arts. 930.4(C) and/or (F), which provide for dismissal of a post conviction application if it raises a claim which should have been raised on appeal.  According to the reasons given by the trial court, Pierce should have raised the second through fourth claim on appeal.  Pierce does not argue that the state procedural bar is either not independent or inadequate.

### c. Cause and Prejudice

To establish a cause for his procedural default, Pierce must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Even under a broad reading, he has not demonstrated in his pleadings the existence of any objective factor external to the defense that impeded his ability to raise these claims in a procedurally proper manner.

Furthermore, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural

29

default." *Murray*, 477 U.S. at 486; *see also*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (a petitioner must first prove that counsel's actions were constitutionally deficient before such a claim can stand as cause for a procedural default).  As discussed above, petitioner argues in his first claim for relief, that he obtained ineffective assistance of appellate counsel when his counsel failed to raise the above procedurally defaulted claims on direct appeal.   The Court has reviewed petitioner's claim of ineffective assistance of counsel and finds there was no deficiency in appellate counsel's performance in failing to raise these claims, as discussed above.  Appellate counsel need not advance every argument, regardless of merit, urged by an appellant.  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985), *citing Jones v. Barnes*, 463 U.S. 745 (1983).   The Supreme Court noted in *Jones* that experienced advocates have emphasized the importance of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues," and that "a brief that raises every colorable issue runs the risk of burying good arguments." *Jones*, 463 U.S. at 751, 753.

As noted above, petitioner's appellate counsel appears to have exercised her professional judgment in determining which claims to raise on appeal.  Pierce, therefore, has not shown sufficient cause for his failure, or his counsel's failure, to properly raise these claims in state court.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (*citing Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)). Thus, having failed to show an objective cause for his default, the Court need not determine whether prejudice existed.

*See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (*citing Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).  However, this Court has already reviewed petitioner's second through fourth claims under his claim of ineffectiveness of counsel, and determined that the failure to raise these claims did not ultimately prejudice petitioner.

Petitioner's second through fourth claims are therefore procedurally barred from review by this Court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).

### d. Fundamental Miscarriage of Justice

Petitioner's only remaining means of escaping this bar is if he can establish that a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish this, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted);  *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

31

Petitioner has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence of the crimes charged. *Murray*, 477 U.S. at 496.   When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because petitioner has not met any exception to the procedural bar, his procedurally defaulted claims must be dismissed.

### 3. Claim Five: Unconstitutional Habitual Offender Law

The State contends that Peirce's fifth claim is also in procedural default and barred from federal review.  As discussed above, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman*, 501 U.S. 722.  Here, the trial court denied petitioner's second application for post-conviction relief, and his claim that the application of the sentencing enhancement provisions of La.Rev.Stat 15:529:1 denied him due process.  State Rec. Vol. 4, Tab 16..  The Louisiana Fifth Circuit denied his writ, finding no error in the trial court's decision.  *Id.* at Tab 11.  The Louisiana Supreme Court appears to have denied his claims on a state procedural rule.  Its opinion, in its entirety, states: "Denied.  La.C.Cr.P. art. 930.3; State ex rel. Melinie v. State, 93-1380 (La. 1/12/96), 665 So.2d 1172." State Rec. Vol. 10, Tab 24.  La.Code Crim.P. art. 930.3, Grounds, reads:

> If the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:
>
> (1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;
> (2) The court exceeded its jurisdiction;
> (3) The conviction or sentence subjected him to double jeopardy;
> (4) The limitations on the institution of prosecution had expired;
> (5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or
> (6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.
> (7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

The court in *Melanie*, the case cited by the Louisiana Supreme Court in rejecting petitioner's claims, stated that art. 930.3, "which sets out the exclusive grounds for granting post-conviction relief, provides no basis for review of claims of excessiveness or other sentencing error post-conviction." *Melanie*, 665 So.2d 1172. This rule has dubious application in the present case: petitioner is not challenging his sentence as excessive, or that there was other error in his sentencing. He is claiming that the statute under which his sentence was enhanced was unconstitutional, in light of the U.S. Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296 (2004). In other words, he is claiming that the finding that he was a habitual offender was obtained in violation of the constitution of the United States, which is one of the grounds for relief under article 930.3, LA.CODE CRIM.P. art. 930.3(1), or that the statute creating the offense for which he was convicted and sentenced (here, his conviction and sentencing as a multiple

33

offender) is unconstitutional, under art. 930.3(5).

It appears the state courts barred review of petitioner's claim based on procedural default pursuant to LA. CODE CRIM. P. art. 930.3.  However, this Court must consider whether the bar prohibits consideration of the claim on federal habeas corpus review.  For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

As stated above in the discussion regarding the procedural bar to petitioner's second through fourth claims, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin*, 98 F.3d at 847.  When state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar.

Although it notes that Art. 930.3 has dubious application to the facts of this case, even if petitioner's claims here do meet an exception to the procedural bar, this Court would find that his fifth claim has no merit and should be dismissed.  Petitioner was adjudicated a habitual offender after a hearing on May 14, 2002, on the basis of his prior convictions.  State Rec. Vol. 7 at 683.  Petitioner claims that the statute under which petitioner was adjudicated a multiple offender, by the trial judge and not a jury, is unconstitutional.  In *Apprendi v. New Jersey*, 530 U.S. 466, the Supreme Court held "[*o*]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 490 (emphasis added).  The fact of prior convictions was all that the judge was required to and did find under Louisiana's habitual

34

offender law.  Petitioner contends that in its subsequent decision in *Blakely v. Washington*, 542 U.S. 296 (2004), the Court "let the other shoe drop."  Fed. Rec. Doc. 1-3 at 56.  In that case, the Court held that the state trial court's sentencing of a defendant under a Washington State statute to more than three years above the statutory maximum for his offense, on the basis of the judge's finding that the defendant acted with deliberate cruelty, violated his Sixth Amendment right to trial by jury.  *Blakely*, 542 U.S. at 303.  Despite petitioner's contention, the Supreme Court has continued to apply the holding of *Apprendi*, which preserved the exception for facts of prior convictions from the rule that any fact that increases the penalty beyond the prescribed statutory maximum must be found by a jury, post-*Blakely*.  *See e.g., Cunningham v. California*, 127 S.Ct 856, 864 (2007); *see also U.S. v. Helm*, 502 U.S. 366, 368 (5th Cir. 2007).   Accordingly, this claim has no merit.  Therefore, even if the Court were to find that this claim was not procedurally barred from its review, the claim must be dismissed.

## IV. REQUEST FOR COUNSEL AND FOR EVIDENTIARY HEARING

In his petition, petitioner also requests that this Court appoint counsel pursuant to 18 U.S.C. § 3006A(g),[7] because the issues he presents are legally and factually complex, and an evidentiary hearing, because his claims allege facts which, if proven, would entitle him to relief. This Court may appoint representation for any financially eligible person who is seeking relief under 28 U.S.C. § 2254 if it determines that the "interests of justice so require," under 18 U.S.C.

---

[7]This provision allows a judicial district or part of a district to establish a Federal Public Defender Organization when certain circumstances exist.

§ 3006A(2)(B).  While it finds that his petition elucidates no federal constitutional violations, the Court notes that petitioner, who also chose to represent himself at trial, has presented his claims with an impressive degree of legal sophistication.  Without the aid of counsel (which a federal habeas petitioner is not entitled to under the Sixth Amendment, *see Cousin v. Lensing*, 310 F.3d 843, 848-49 (5th Cir. 2002)), he has fully and capably presented his claims, and the Court has thoroughly reviewed the record and considered the merits of each.  The Court thus finds that the interests of justice do not require the appointment of counsel in this case, and the request for appointment of counsel is DENIED.   In addition, petitioner has not alleged any facts, which if true, would entitle him to relief.  His request for an evidentiary hearing is therefore DENIED.

## V. CONCLUSION

Having considered the petition, the record, and the applicable law, the Court determines that the petitioner has not established that his state conviction presents grounds for the relief requested.  Accordingly,

IT IS ORDERED that the petition of Emile Pierce be hereby DENIED WITH PREJUDICE.  Judgment will be entered accordingly.

New Orleans, Louisiana, this 15th day of April, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE